Good morning, Your Honor. My name is Kevin Merch, and I represent the estate, or actually the representative, Karen Mandeville of the estate of Richard Mandeville. And as I'm sure this Court has read the facts, I'll just briefly go into what I think are pertinent facts and then into the direct issues very quickly. I'd like to reserve half my time if I may. This case involves a man injured while he was working at a home site at Lake Tahoe. Specifically, what he did is he would drill holes in rocks and then pour this liquid, which is the product in this case, into the holes. It would expand, and it would crush the rocks, and then they could move the rocks away. My client was injured by what's called a blowout, which means when it was poured in, it blew out of the hole, went into his eyes, it blinded him in one eye, caused severe burns on his face and arms. And as a result of that, we have this lawsuit. I represent the estate because my client committed suicide after that point in time, in 1999, I believe. The main issues that we think are subject to review by this Court are some rulings by the magistrate in a motion for summary judgment. Specifically, the first ruling was, or the first one I'd like to address, dealt with direct privity, which means that there was a finding that my client could not sue the manufacturer, Onada Cement Company, unless he specifically purchased the product from someone else. We believe that that was an incorrect ruling under just the generally accepted state of the law with respect to product defect. Also found in 402A, the secondary statement of torts and a number of cases that have found that there are ways that a non-purchaser does have privity. Nonetheless, the Court did make a finding that since my client didn't purchase the product, he had no privity and couldn't bring the contract claims and the other claims that were brought. That's in the brief, and we know the Court has reviewed that. The second problem that we had in the ruling by the magistrate is that he actually made factual findings that we would have considered were triable issues of fact. In particular, he made a finding that, what I call the use finding, that there's no way in a trial we could overcome a witness's testimony that my client was looking down the hole when the blowout occurred, even though my client contested that. But because this one witness said that he thought he saw that, that my client couldn't win anyway and it didn't matter, and basically we feel that that was an incorrect factual finding and an incorrect weighing of the evidence. As you know, in summary judgment motions, the evidence, it's equal. There shouldn't be a determination as to credibility, especially on such a large issue as whether or not the use was proper. The third finding we think was improper is that the Court found that the plaintiff had offered no other evidence other than himself as to what had happened or as to whether or not the product was dangerous. We believe that that was incorrect. He did offer evidence that it was defective. A little bit about my client is that he had been in this business a long time, probably was one of the foremost experts on crushing rocks at Lake Tahoe to build houses. And he had, he certainly did provide an affidavit. However, the, there was other evidence to show that this product was dangerous, not only just dangerous, but extremely dangerous. The, the, we had received during discovery internal reports from Onada, and in those internal reports, it documented a number of accidents that had occurred and the results of those accidents, meaning what had happened to the people. The results were second- degree burns and, and blindness or severe problems to the, to the eye area. In, in particular, there was even a case, Honor, about the same time as, as our case where someone was blinded. That evidence was attached. The, the evidence was attached along with an internal, they had an internal instructions on how to use the product for people at, I guess, in, in Japan at the Onada plant. And then they had instructions that came to the United States. We believe that that was substantial, circumstantial evidence that showed that, that the product was dangerous, at least, in order to get us into the defective product realm. The, nonetheless, the court, we believe, erred, and, and with all due respect, we believe that we erred by finding that we, that we offered no other evidence other than our plaintiff's testimony. But our plaintiff's testimony still would have been sufficient under Rule 56. The next, the next error is we believe that the expert that was hired by Onada should, his testimony should have not been allowed. And, and, and it might not have been allowed the way it was finally came down. There was some, some orders that were, that kind of didn't focus on it, so maybe, indirectly, it wasn't allowed. But, but they hired an expert, and their expert, we used as an expert my, my client. And the reason we used him is because under 402 A, comments H and I, you have to, when you're looking at whether or not a warning is proper, you have to look at the end user person. And my client, to determine whether or not that end user's expectations would be satisfied by the warning, my client was probably the foremost person at the lake on this particular thing. And we figured that was the correct thing to, to do, is to have him be an expert. The, they, they retained a university professor, and we, the university professor was not provided, as we were not provided, a, a copy of the formula, so he could make a determination as to why this was blowing out of the hole. It was supposed to be safer than dynamite, and so people, people were supposed to buy this liquid that expands and, and, and whatnot. The, we believe that at least the formula should have been provided to him. We believe that at least he should have had an expectation by having worked with the product before he had not. Finally, and I'm trying to go fast, finally, we, we believe that there was an error on, well, there's an error in, in every place where the court says direct privity is required. But also, we believe there was an error in its finding that there was, there was no extreme and outrageous conduct. And that kind of goes back to the factual finding. But the court actually made a finding there was no extreme and, and outrageous conduct in this case. We believe that, that the, it was a factual finding improper, but there was severe extreme and outrageous conduct. In this case, these people had a warning that had substantial elements that were not listed in the U.S. warning. For instance, they had a warning that said, when you use this product after you drill holes and you put the, the substance in, make sure you put a, what's called a curing blanket over it. That was not in the U.S. warning. Number two, wear a hard hat. Not in the U.S. warning. Number three, wear goggles. Not in the U.S. warning. Instead it said safety glasses. Now with all, with, you know, giving deference to the other side, I think it shows a picture of goggles in the warning, but it says use safety glasses. But that's important because when you were drilling the holes and their report showed they had something called peripheral blowout. It's called peripheral blowout. And the peripheral blowout means that a person that's not exactly looking in the hole could get hit in the eye through the side because as it blows out, it has a And, and, and they knew that. At the time they were drafting the United States warning. Also in, in the warning or in the documents in, in, that Onada, Onada used in Japan, it said you literally had to put a temperature gauge in a hole. And then you would pull it out and determine if it was a certain temperature gradient because there were three different types of products depending upon gradient. They, they, in the other, in the United States one it said these are the temperatures to use it at, but it didn't say to put it in the hole. And it's important. It sounds trivial, but it's important because there were three different types of temperature that could be considered. Rock temperature, water temperature, outdoor temperature. And, and so it was very important that they, that the people using this product should have known that you put in, you should put it in this temperature gauge and then, and after two or three minutes, pull that temperature gauge out and look to make sure you have the right range. Another thing is in the, in the Japanese or in the Onada's, in Onada's materials for, for their clients, non-U.S. clients, it, you weren't supposed to, you were supposed to fill it up to a point in the hole that was ten centimeters below the top. And in the U.S. it did not have that. Also, in the internal documents and the Onada people admitted that their temperature gradients might be wrong, meaning they were suffering blowout at, during certain ranges and they might want to change these ranges to make it, to make it safer, the product. That was not told nor done to, in the United States warnings. Because those things weren't done, my client relied on misrepresentations that were contained in those materials. Now, I know that the argument, the counter-argument in, in this case is going to be, well, there was a witness that said my client was looking down the hole and he didn't. Well, rather than anticipate that, why don't you save the time that you wanted for rebuttal and if your opponent raises that argument, you get a chance to counter it. I, I appreciate that. Without him having a chance to come back up. Thank you, Your Honor. Counsel. Mr. Hannigan. Yes. Good morning, Your Honors. My name is John Hannigan. I represent the appellant in this matter. And a couple of things, Your Honor. I learned something here for the first time this morning, in fact, that the plaintiff is now claiming that the, he indeed had an expert in this case and it was the plaintiff himself. No expert was ever designated in this case. No report was filed. And no argument was made to the district court who found, for summary judgment in this case, that indeed there was an expert in this case and it was the plaintiff himself. So that, that's never been considered before in any of the proceedings. Nevertheless, Your Honor, this case, plaintiff, based on the accident, there's not a lot of dispute about what happened that day. You say there's not a lot of dispute? There's not a lot of dispute about what happened at the site that day, Your Honor, with respect to the, being relevant to the findings of the district court in this motion. In other words. I thought the key question as to where was he, was he looking down the hall, is in dispute. It's not in dispute, Your Honor, because it's not, it's immaterial to the finding for summary judgment. This is not a product. We're not claiming that we need to prove that the plaintiff misused the product in order to force summary judgment to be granted and to be sustained by this Court. Do you need to show, or do they need to show, maybe I should say it this way, is it an issue whether your warnings were fully, were sufficient? The issue has been raised, Your Honor, but that warnings, as we argue in our briefs, is something that they have to challenge through expert testimony, and they've made no such challenge here. There was nobody put forward. Wait a minute. Where did you get that, that they had to do it through expert testimony? Pardon me, Your Honor? Where does that come from, that you have to have an expert? On warnings. Yes. Well, there was no evidence put forward in this case that the warnings were inadequate, no admissible evidence by anyone who would, could reliably get on the witness stand and say that these warnings are inadequate for the following reasons. Was there a difference between the warnings given U.S. customers and non-U.S. customers? I believe there were some differences in the warnings with respect to how they were expressed and the content of some of them. Yes, there were, Your Honor. There were no, to characterize them as more stringent or less stringent, I mean, it's a matter of counsel speculation, but there's been, there was no of record testimony on that issue by anybody that could be, it could even be argued is reliable in this case. This is Mr. Murch arguing that in his opinion these warnings don't appear to be adequate or they're different from the warnings in Japan, but no record was made of admissible evidence, which is the test for this, our summary judgment. And when you say admissible evidence, you're saying that the only way this evidence could have come in would have been through an expert? I mean, is that what you're saying when you're using the qualifier admissible? Yes, Your Honor. So we're back to the expert question. Why do we need an expert? It's a considerate question, Your Honor, yes. Why do we need an expert to say here's the warning that was given in Japan, here's the warning that's given here, the warning that's given here clearly didn't warrant the consequences that we actually had in front of us, and therefore, no, I didn't know what I was supposed to do because I wasn't warned as to what was going to happen. Why do we need an expert for that? Your Honor, there was no such evidence in this case. No, wait a minute. I think you want to say there's no admissible evidence of that. There would have been evidence of that if Mr. Mandeville had been allowed to testify. Mr. Mandeville gave deposition testimony and, indeed, was allowed to testify. Well, and then we do have evidence. You just claim it's not admissible evidence. Mr. Mandeville did not talk about the comparing the Japanese warnings to the American warnings and making an evaluation one against the other and saying this warning was good, this warning wasn't good. There was no such evidence before the district court judge in this case. Was there evidence as to what the warnings were given here and what the warnings were given in Japan?  Was there such evidence in front of the court? I don't believe so, Your Honor. Well, how do I have all this stuff in the record then? Mr. Murch put a lot of documents in that he had gotten during discovery into the pleadings in this case, Your Honor. And were those documents not properly in front of the court at summary judgment? They were just there, Your Honor. They weren't admissible evidence before the court, no. And they're not admissible because? Your Honor, they weren't brought before the court and argued as a basis for a dispute with respect to a material fact in the case. But they were properly in the record in front of the district judge, in front of the magistrate? I think there were exhibits to one of the depositions of another witness, Your Honor, yes. I think that's how they became part of the record. And they consisted of your client's records? There were internal documents from my client, Your Honor, which included other reports of other accidents as well as some documents in Japanese that were used in Japan and were distributed with the product. And was there some contention that they weren't records from your client or that they were inaccurate or that they required some foundation to be admissible? Your Honor, there was never any dispute brought before the court with respect to the authenticity of the documents, if that's what you're raising. You brought a motion for summary judgment. Yes, Your Honor. And one of the contentions was that there were adequate warnings about the product? Your Honor, our claim was that there was no genuine issue of fact with respect to raised by the plaintiff with respect to the warnings, yes. And the response from the Mandeville side of things was to say, here are internal records from Onada and warnings that they give in other countries. Is that right? He did put those records before the court, yes, Your Honor. But nothing else, no comment or expert testimony about those records. Your Honor, the plaintiff brought half a dozen claims in his complaint, and he had five years to produce competent admissible testimony to support those various claims. And it's our position that all of those claims should fail because the plaintiff was unable to establish admissible evidence for any of the required elements with respect to any of those claims. What's your best case that an expert witness is required on the warnings issue? The case is cited in our brief, Your Honor, which one of them is the Powell case, I believe, which establishes that you need such testimony with respect to the adequacy of the warnings. I think, Your Honor, the claim in this case, however, that is sort of at the nut of the case, I think, is the claim of strict product liability and product defect and whether you need an expert to testify with respect to that claim. The plaintiff relies on the Stankiewicz case, which I think can be distinguished from the facts in this case. Because we agree that you do not need to call an expert witness to prove product defect in a complex product liability case as here. But if you don't, you need to offer circumstantial evidence that shows that there is a dangerous condition and an absence of secondary causes. And the plaintiff here could not show an absence of secondary causes, and therefore, the Stankiewicz case did not apply. And I think the district court applied the trilogy of Culbertson, Griffin, and into the analysis that set out in those three cases as the district court analyzed based on his review of the record and found that there was no, that there was no expert testimony and that there was no circumstantial evidence giving rise to a genuine issue of fact as we have here. The plaintiff raised arguments relating to res ipsa locator, to which we responded that the defendant did not have any control over the instrumentality, to which the plaintiff said, well, they didn't have the formula. There was never a request for the formula in the discovery process. The other appeal, Your Honor, on the issue of costs, I would rely on the briefs and only say that the briefs covered that quite well. Okay. Thank you, Your Honor. I didn't know if you wanted me to raise it or not. As to the other claims, Your Honor, the contract claims, there was no contract between the plaintiff. The district court probably found that. There was no fraudulent and negligent misrepresentation to induce because there was no contract, there can be no fraudulent inducement. There was no intentional infliction of emotional distress because there was no outrageous conduct proven and no genuine issue of fact raised with respect to that claim. So the only claim left is the product liability, product defect claim, which I believe through a microscopic analysis, the district court below, as I've explained hopefully, found there to be no genuine issue of fact. That's it, Your Honor. Thank you. Okay. I don't see any other questions. Thank you very much for your argument, counsel. Rebuttal? And you understand you're limited to what he argued, in responding to what he argued. Okay. Time's not my concern. I just want you to understand you have to respond to what he said. Yes, Your Honor, and I understand that. With respect to the first argument that there was my client was never represented as being an expert, on page 17 of our reply, we cite to the opposition to motion for summary judgment affidavit of Richard Mandeville. On paragraph 8 of that, it states, I am licensed to discharge explosives, which means that I have had several years of experience in handling explosives, including reading and understanding whether a product is dangerous. From my experience and after review of Exhibit E, Onata International documents, it is my opinion the warning contained in the product and that the defect caused me to lose my eye and to be injured. The blowup of Super Brystar 2000 product maimed and blinded me. That was just in reference to that this is the first time that it's been brought up. It was brought up. It was in the opposition to motion for summary judgment, which was included in his affidavit and not contested. Expert testimony is, I do not believe, is necessary. And I believe a case for a cite on that is Aqaba versus United Tire. I'm sorry, I don't have the site specifically here, but I know that it is in my brief. With respect to whether or not there was outrageous conduct, and that was one of the things that I was going to point out to right when I left, is I took the deposition of some individuals from Tokyo. And Mr. Totokano, in his deposition transcript, is included. He said that he knew at the time they were preparing the United States warning that the product, if it got into the eyes, could cause blindness. And he said he knew that. And nonetheless, the warning says that if it gets in your eyes, rinse and call doctor. And we believe that's inadequate when they know, and they had had accidents where people had been blinded, and they knew about that. With respect to their internal documents, have a warning about losing sight of the eyes. Yes. Yes. Because the internal documents included in the actual accident reports where people had lost the sight of the eye. In fact, in one report, the December 16th, 1996 accident, it says don't go and visit this 51-year-old male because he's very upset about losing his eye, or, I mean, it was there. I don't need to overstate it. We believe that it's extreme and outrageous conduct for somebody to know a product can blind you if it gets in your eyes. And it does not say that this product can blind you if it gets in your eyes, just rinse. And we believe that's extreme and outrageous because extreme and outrageous is reckless, and in any event, recklessness is a tribal issue of fact for a jury, and that's under the case of Posadis versus City of Reno, Posadis. With respect to three cases you mentioned just very quickly, Culberson, DeViero, and Griffin, he stated for some sort of a proposition that you need an expert. In each one of those cases, there was an expert at trial, and the expert's testimony was stricken because it was junk science effectively. It's a quick way of saying, but there was no other evidence. In this case, we have their internal documents that say that this product was blowing up before it got to the United States. We have substantial evidence. We have the person, or we had the person that was there who gave deposition testimony. He says his best case is Powell versus Yosemite. How would you characterize that case, or how would you say that that case doesn't matter here? I can't respond to that because I can't remember it as I stand here right now. I would say that the cases of Acaba versus United Tire. I do have a cheat sheet here. Chapman versus Brown, Vacation Village versus Hitachi, they're all contrary to that. Okay. And I'm sorry, I just don't remember it as I stand here. Thank you very much for your time. Thank you. Case just argued will be submitted. Thank both counsel for their arguments. They were helpful. Case just argued will be submitted for decision, and we'll proceed to Beachlet versus Gerber.
judges: Hawkins, W.fletcher, King